(No. 95-CC-3033-)

EVEN/ANNA PROMOTIONS, Claimant, *v.* THE STATE OF ILLINOIS, BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES, Respondent.

*Order filed April 10, 1998.*

METNICK, WISE, CHERRY & FRAZIER (KATHRYN SALT-MARSH, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (SUZANNE L. DENNIS, Assistant Attorney General, of counsel), for Respondent.

## ORDER

RAUCCI, J.

This claim comes before the Court on Claimant Even/Anna Promotions' complaint against Respondent, The State of Illinois, Board of Governors of State Colleges and Universities for Chicago State University. The complaint

alleges breach of contract and seeks damages in the amount of $1,600.

The facts adduced at trial are as follows: Vickie Metnick testified that she is president of Even/Anna Promotions, a promotional business merchandise company. On December 2, 1993, she received a telephone call from an employee at Chicago State University (CSU). Claimant had previously provided merchandise to Respondent. On this occasion, Respondent inquired about Christmas ornaments to be used as gifts at the faculty Christmas party. The Respondent expressed concern about budget and time constraints noting that the party was scheduled for December 19, 1993. Claimant faxed information to Wylola Evans at Chicago State University, including pictures of several different types of ornaments. Although she discussed with Ms. Evans providing a sample, due to the event date, there was not enough time in which to have a sample delivered. Ms. Metnick recommended a brass ornament that could be inexpensively imprinted with the University's logo. Contrary to Ms. Metnick's recommendation, Chicago State University chose an acrylic ball ornament with a paper or cardboard insert of its logo in the middle. Respondent provided camera-ready copy of its logo, and the industry standardized color chart was used to match the school's colors. The cost per unit of each ornament was sixty cents. The ornaments were produced by rush order, for which the school was not charged. The ornaments were messengered to the school on December 17, 1993.

A week after delivery, Ms. Metnick was advised that the ornaments had not been used at the party. She received a telephone call from Wylola Evans who advised, "We don't like the ornaments and we didn't use them." Ms. Metnick testified that there was no mention of any

defect in the ornaments and no refusal to pay for the ornaments was initially communicated to her. Ms. Metnick testified that she had numerous discussions with Brian Bochenek at Chicago State University during which Mr. Bochenek assured her that the invoice for $1,600 was going to be paid. However, the payment was never made and the ornaments were returned to Claimant two months after they were received.

In February, 1994, Claimant was informed by letter that Chicago State University was claiming that the ornaments were defective and that payment was being refused.

When Claimant received the returned ornaments she noted that only one of the ten boxes had been opened. She described the ornament as having a molded loop at the top for purposes of hanging. Claimant produced a sample of the ornament which was admitted into evidence.

Wylola Evans, Director of Special Events for CSU, testified for the Respondent. Evans stated that she ordered the ornaments but did not use them as gifts at the Christmas party because she determined them to be of inferior quality. Evans testified that they examined quite a few of the ornaments and the "hoops" kept falling off the ornament and that the imprinted logo looked as though it had been xeroxed. Ms. Evans testified that she contacted the Claimant a week before the party. On February 18, 1994, Respondent sent a letter refusing payment for the ornaments and the actual ornaments were returned to Claimant some time later.

The Respondent produced their departmental report which was admitted into evidence.

Claimant filed a trial memorandum. Respondent did not file a trial memorandum.

In this case it is clear that Respondent placed a special order for 1,000 custom-made Christmas ornaments with the Chicago State University logo. Claimant's clear and convincing testimony established she had initially recommended an alternate product, however, Respondent was specific in its order request. In fact, Respondent waived their opportunity to inspect a sample item because they were working under time constraints. The order was promptly delivered to Respondent. In the months following the delivery, CSU's agent represented that they did not like the product but repeatedly indicated that the invoice would be paid.

Respondent formally rejected the order by letter approximately two months after delivery and the product was actually returned at some later date. Respondent contends that the product was defective and that the hoops for hanging kept falling off the ornaments.

Respondent's version of the facts is unlikely and incredible. An inspection of a sample ornament showed that the hoop on the ornament was plastic molded into the ornament. It could not fall off without breaking the ornament. Further, when the rejected goods were returned, only one of the ten boxes had been opened and the ornaments were intact.

Clearly Respondent did not "like" the ornament. However, Respondent assumed the risk when they placed the rush order without an inspection of a sample prior to placing the order.

Claimant fulfilled all of their obligations under the agreement. Pursuant to Respondent's custom order, Claimant produced an inexpensive plastic ornament which fully complied with the description and specifications originally provided.

·Respondent failed to reject the product for more than two months after delivery, and the basis for the rejection was not reasonable or supported by the evidence. Respondent breached its agreement by refusing to pay for the items.

It is therefore ordered, adjudged and decreed that the Claimant is awarded sixteen hundred twenty-five and no/100 ($1,625) in full and complete satisfaction of this claim.